[No. 35795.   Department Two.   September 20, 1962.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES CALHOUN, SR., *Appellant*.*

*Donald D. Haley,* for appellant.

*Charles O. Carroll* and *Victor V. Hoff,* for respondent.

DONWORTH, J.—Appellant has appealed from a judgment and sentence based on the verdict of the jury finding him guilty of the crimes of assault in the second degree (committed upon his wife) and of assault in the first degree (committed upon their nine-year-old son).

The information on which he was tried contained four counts charging appellant with four assaults committed with a pistol on the same day as follows:

Count I.  Second degree assault—his wife being the alleged victim.

Count II.  Second degree assault—his minor son (aged 8) being the alleged victim.

*Reported in 374 P. (2d) 555.

Count III. Second degree assault—his minor daughter (aged 6) being the alleged victim.

Count IV. First degree assault (with intent to kill)—his eldest child, their nine-year-old son, being the alleged victim.

Appellant pleaded not guilty to each count and was tried thereon, no motion being made for a separate trial as to any of the counts. All counts charged that the respective assaults were committed on May 17, 1960, with a pistol. He was convicted and sentenced on counts I and IV, so we are not now concerned with the other two counts.

No motion for a new trial was made in the trial court. It is stated in appellant's brief that:

"On May 17, 1960, appellant visited the home of his wife, who had filed for divorce, and after an unsuccessful attempt at reconciliation, shot himself through the head.

"The charges were filed as a result of his activities on that day."

The evidence is hereinafter referred to insofar as necessary to an understanding of each of appellant's four assignments of error, which are stated in his brief as follows:

"1. The Court erred in allowing attacks to be made on appellant's character prior to his taking the stand and prior to his putting his character in issue.

"2. The Court erred in allowing appellant's wife to testify in violation of RCW 5.60.060(1).

"3. The Court erred in admitting State's Exhibit '23' into evidence.

"4. The court erred in failing to define the term 'grievous bodily harm' as used in Instruction No. 9."

Regarding the first assignment of error, we find no merit in the contention that appellant's character was put in issue by the state prior to his putting it in issue.

It is argued that his wife's testimony that he had been absent from the family home for three years and eight months before May 10, 1960, and that she had started divorce proceedings showed that he was guilty of the crime of desertion. A husband may be absent from home for a protracted period for many reasons having no connection

with desertion. Appellant's testimony, when he later took the stand, was that he was serving a sentence for a felony and was paroled about May 10, 1960.

The next argument in support of this same assignment is that his wife's further testimony that she was somewhat afraid of her husband during the time in question implied that he was a vicious and dangerous man. While the subsequent evidence shows that her fear of him was entirely justified, the statement referred to was not prejudicial.

A third complaint is that a police officer testified that appellant admitted to him at the time of his arrest that he had obtained the pistol used in these assaults "from a girl friend." The deputy prosecutor, in his argument to the jury, referred to appellant's having obtained the pistol "up there in this place where he was living with this gal."

In none of these instances was any motion to strike any testimony or any request for an instruction to the jury to disregard these statements made by appellant's trial counsel.

It should be stated parenthetically that appellant was represented at the trial by counsel other than the attorney who is appearing for him in this court.

Since no such objection or motion was made during the trial, and since no motion for a new trial was interposed after the verdict was received, we cannot review these matters because the trial court has never had any opportunity to pass on them. *State v. Davis,* 41 Wn. (2d) 535, 250 P. (2d) 548 (1952).

The second assignment relates to the trial court's permitting appellant's wife to testify over his objection regarding matters concerning his alleged assaults on their three children. After she had testified regarding her starting divorce proceedings and his attempts to dissuade her from going through with it, she was asked about the events which occurred on May 17, 1960 (the date of the alleged assaults). Appellant's trial counsel then objected to her testifying as to the alleged assaults on the children on the ground that she was incompetent under RCW 5.60.060 because she was

appellant's wife. The jury was excused and the matter was discussed between court and counsel, concluding as follows:

"THE COURT: What is the State's position as to the testimony of the witness who is the wife against the husband as to the other counts? MR. BURNS: Well, your honor, as far as that goes Mrs. Calhoun was not in the house when the other children were threatened, and the kids themselves are going to be testifying about that. She will not be testifying to them, just that she was threatened and menaced with a gun. MR. CHAMBERS: If it is limited to that scope, I would say that would be all right, but to trace his actions all that day I would say would be a little broad. MR. BURNS: I am not prepared to take the position that it is too broad or not. That is another question and I don't think it will come up. THE COURT: I am inclined to think so. Of course, I also had in mind the question of whether or not the privilege should be claimed at an earlier stage. However, I think perhaps you are right. I am inclined to overrule your objection as to generality on the assumption that there will be nothing prejudicial which will come in. That is up to the state. MR. CHAMBERS: May I have a continuing objection to any material that goes outside. THE COURT: I think perhaps you are entitled to that."

Appellant contends that he was compelled to take the stand to explain away the implications arising from the state's evidence that he was guilty of desertion and of adultery. The testimony of which he complains was relevant to the crimes alleged in the information. He elected to take the stand and testify in his own behalf because the testimony of his own children, a neighbor, and the arresting officers tended to prove that he was guilty of the assaults charged in counts I and IV.

The recognized exceptions to the rule that evidence of other crimes is not admissible include evidence bearing upon motive, intent, and absence of accident or mistake. The evidence complained of had a relevant bearing upon these matters.

This evidence showed that he came to his wife's home about 11:30 a. m. on May 17, 1960, and gained admission to the house by deception. He had the pistol with him. He

remained there all the rest of the day. At about 3:30 p. m. the two boys returned from school. Appellant exhibited the pistol to them. About 5:30 p. m. his wife was allowed to go for a walk to think things over (concerning his proposed reconciliation). She testified that just before she left the house he told her that if he heard any police siren, or if any neighbors came to the house, he was going to shoot the children and then himself. Subsequently (as the state's evidence tended to show), he did shoot the older boy and then shot himself through the head. When he took the stand, he denied shooting the boy.

His wife testified that after she left the house she went to the home of a neighbor, who called the police. The neighbor corroborated the fact that she called the police who sent officers in plain clothes to investigate. They arrested appellant when he came out the door with a bullet hole in his head. They entered the house and found the oldest boy lying on the floor with a bullet wound in his head.

Appellant's wife testified that after the shooting she visited the older boy in the hospital every day and that he was unconscious for two weeks. She also testified that the day after the shooting she found a bullet slug in the house. The following then took place:

"Q. Where was the slug approximately. Can you illustrate to us on the map? MR. CHAMBERS: This seems to be going along the lines of the same objection interposed earlier. THE COURT: She may answer."

(This objection refers to the colloquy quoted previously.)

No further objection was made by appellant's trial counsel nor was any motion made to strike the testimony or limit its application to count I (assault on the wife).

The testimony of the wife, above described, forms the basis for appellant's second assignment of error.

We hold that this alleged error is not now available to appellant because of the absence of any such motion during the trial and the failure to bring the matter to the trial court's attention by making a motion for a new trial. *State v. Davis, supra.*

With regard to the third assignment of error, appellant contends that it was error to admit into evidence the bullet slug, which was labeled state's exhibit 23. Appellant argues that the slug was not sufficiently identified, and that the ballistics expert should not have been allowed to state as a fact that the bullet came from the gun used by appellant.

No Washington cases have been cited in support of this assignment of error.

Continuity of possession and identity of the bullet were sufficiently established. Each person who had possession of the bullet, from the time it was found in the home the day after the shooting, testified as to where he obtained the bullet, and to whom he gave it. There were no missing links in the chain of possession.

The ballistics expert simply stated his conclusion, without labeling as "fact" or "opinion," that all three bullets compared by him were fired from the same gun. No objection or motion to strike was made.

We find no merit in assignment of error No. 3.

The final assignment of error "in failing to define the term 'grievous bodily harm' as used in Instruction No. 9" refers to the instruction on the lesser included offense of second-degree assault on the nine-year-old son, as to whom appellant was primarily charged with first-degree assault. There could have been no prejudice with regard to instruction No. 9, since the jury found appellant guilty of assault in the first degree on that count, and, therefore, had no occasion to consider instruction No. 9.

The judgment of the trial court is affirmed.

FINLEY, C. J., OTT, HUNTER, and HAMILTON, JJ., concur.